# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 18-2138 PSG (ASx) | Date | February 28, 2020 |
|---|---|---|---|
| Title | Romulo Ray Rufo et al v. United States of America, et al | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** Findings of Fact and Conclusions of Law Following Bench Trial

The Court held a bench trial in this matter on February 4, 5, and 13, 2020. After considering the evidence offered at trial and the arguments of the parties, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

I.  Factual Findings

Plaintiffs Romulo Ray Rufo and Trina Rufo ("Plaintiffs") brought this action against the United States ("the Government") for injuries stemming from a car accident that Mr. Rufo had with a Government vehicle.

At the time of the accident, Mr. Rufo was a 51-year old man living in Long Beach, California with his wife, Mrs. Rufo. *See Trial Transcript Day 1*, Dkt. # 64 ("*Trial Tr. I*") 215:12–13. Mr. Rufo worked at Southern California Edison in their Rosemead office. *See id.* 215:16–17. Prior to the accident, Mr. Rufo had a medical history that included obesity, type II diabetes, sleep apnea, and hypertension. *See id.* 89–90.

On Wednesday, March 16, 2016 Mr. Rufo was driving to work along the I-710 freeway. *See Trial Transcript Day 2*, ("*Trial Tr. II*") 11. Mr. Rufo was hit from behind by Special Agent Albert Smith of the Drug Enforcement Agency. *Trial Tr. I* 222–24. SA Smith was on-duty at the time of the accident. *See id.* 14:21. Mr. Rufo testified that he stopped his vehicle, looked in his rear-view mirror, and saw SA Smith driving toward him while looking distracted by something in his center console. *See id.* 223:19–24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2138 PSG (ASx) | Date | February 28, 2020 |
|---|---|---|---|
| Title | Romulo Ray Rufo et al v. United States of America, et al | | |

When SA Smith hit Mr. Rufo, Mr. Rufo's head and neck were propelled up and back, such that he was looking at the ceiling. *See Trial Transcript Day 3*, ("*Trial Tr. III*"), 41:11–13. Mr. Rufo was dazed, and only responded when SA Smith knocked on his window to ask if he was ok. *See Trial Tr. I* 224:10–15. Mr. Rufo also dry heaved. *See id.* 225:10–12. Mr. Rufo eventually emerged from his vehicle to take pictures and a video of the scene. *See id.* 224:6–8. He was then transported to the hospital via ambulance, where imaging of his brain did not reveal any abnormalities. *See id.* 85:23–86:1; 225:18–20. In the week after the collision, Mr. Rufo began to experience dizziness, visual problems, cognitive deficits, and balance issues. *See id.* 225–27.

On April 21, 2016, Mr. Rufo was terminated from his job at Southern California Edison as part of a downsizing. *See Trial Tr. II* 20:17–20. He has not worked since. *See id.* 21:22–24. Mr. Rufo's mother also passed away in August 2016. *See id.* 23:1–5.

In the months following the accident, Mr. Rufo's symptoms worsened. *See id.* 6–8. In September 2016, he saw Dr. Diemha Hoang, a board-certified brain injury specialist. *See Trial Tr. I* 78:2–4. Dr. Hoang diagnosed Mr. Rufo with post-concussion syndrome, also known as a mild traumatic brain injury, as a result of the car accident. *See id.* 79:19–80:2. Mr. Rufo's symptoms now include headaches, neck pain, dizziness, nausea, vertigo, vision problems, memory defects, depression, and balance issues. *See id.* 173:23–174:2; *Trial Tr. II* 6–8. His injury has rendered him permanently disabled and unable to drive. *See Trial Tr. I* 97:23–98:2, 201:24–202:1.

The Rufos filed this lawsuit on March 14, 2018. *See generally Complaint*, Dkt. # 1 ("*Compl.*"). They assert a single cause of action for negligence and seek damages for medical expenses, loss of income, pain and suffering, and loss of consortium. *See generally id.*

II. <u>Legal Standard</u>

The Federal Tort Claims Act ("FTCA") preconditions liability and jurisdiction upon proof of an actionable duty, causation, and recoverable damages under the law of the state wherein the conduct complained of occurred. *See* 28 U.S.C. §§ 1346(b)(1), 2674 et seq. To be cognizable under the FTCA, the claim must arise from the negligent or wrongful act of a government employee acting within the scope of his or her employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Dalehite v. United States*, 346 U.S. 15 (1953).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2138 PSG (ASx) | Date | February 28, 2020 |
|---|---|---|---|
| Title | Romulo Ray Rufo et al v. United States of America, et al | | |

Here, the accident occurred in California, and thus California law applies. In order to prove that a defendant was negligent under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003).

III.  Legal Conclusions

    A.  Liability for Negligence and Loss of Consortium

The Government neither contested duty nor that SA Smith was working within the course and scope of his employment with the DEA. The Court takes the questions of breach and causation in turn.

        *i.*  *Breach*

In California, the duty of care is that of the "ordinary prudent or reasonable person" under all the circumstances. *Tucker v. Lombardo*, 47 Cal. 2d 457, 464 (1956). Here, SA Smith initially had enough time to stop his vehicle and avoid Mr. Rufo. *See Trial Tr. I* 223:12–25. However, at the time of the accident, he was looking at something in the middle of his console area rather than keeping his eyes on the road. *Id.* Therefore, because he was distracted immediately before the collision, SA Smith breached his duty of care.

        *ii.*  *Causation*

"In California, the causation element of negligence is satisfied when the plaintiff establishes (1) that the defendant's breach of duty (his negligent act or omission) was a substantial factor in bringing about the plaintiff's harm and (2) that there is no rule of law relieving the defendant of liability." *Leslie G. v. Perry & Assocs.*, 43 Cal. App. 4th 472, 481 (1996).

Here, the Government did not contest that there was a rule of law relieving it of liability. As such, the Court only analyzes whether Agent Smith's breach was a substantial factor in Mr. Rufo's harm, and finds that it was. After the accident, Mr. Rufo had many debilitating symptoms that he had never before experienced. *See Trial Tr. II* 6–8. These symptoms included headaches, neck pain, dizziness, nausea, vertigo, vision problems, cognitive defects, depression, and balance issues. *See Trial Tr. I* 173:23–174:2; *Trial Tr. II* 6–8. Taking these symptoms together, Mr. Rufo's treating physician, Dr. Hoang, diagnosed him with a mild traumatic brain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2138 PSG (ASx) | Date | February 28, 2020 |
|---|---|---|---|
| Title | Romulo Ray Rufo et al v. United States of America, et al | | |

injury. *See Trial Tr. I* 79:19–80:2. The Court finds that the accident, and the mild traumatic brain injury resulting therefrom, was a substantial factor in the damages that Mr. Rufo has sustained since.

The Government's arguments to the contrary are unavailing. Its designated experts could not definitively rule out that Mr. Rufo sustained a concussion based on the evidence before the Court. Dr. Barry Ludwig testified that in order to have a concussion, one must be "dazed" after the accident. *See Trial Tr. II* 41:11–13. However, Dr. Ludwig discounted Mr. Rufo's testimony that he was dazed and dry heaved in the accident's immediate aftermath, and that he did not know how long he sat in his car for before Special Agent Smith knocked on his window and asked him if he was okay. *See Trial Tr. I* 224:10–15, 225:10–12. Further, Dr. Isaac Yang stated that he could neither rule in, nor rule out, a concussion based on his review of Mr. Rufo's medical records. *See Trial Tr. II* 76:22–23.

The Court also rejects the argument that Mr. Rufo's preexisting medical conditions or depression stemming from the loss of his job or his mother's death caused his symptoms. Mr. Rufo did have a pre-accident history of hypertension, sleep apnea, diabetes, and obesity. *See id.* 86:9. But even though Mr. Rufo had these conditions before the accident, he never experienced any of the symptoms that he now reports until soon afterward. *See id.* 6–8. Moreover, his treating physicians ruled out these conditions, as well as the loss of his job and his mother, as causes of his injuries. *See Trial Tr. I* 89:3–90:19.

As such, the Court concludes that the accident caused Mr. Rufo's concussion and resulting damages. The Court also concludes that the Government is liable for Mrs. Rufo's loss of consortium, which is derivative of Mr. Rufo's negligence claim. *See Martinez v. City of Los Angeles*, 141 F.3d 1371, 1381–82 (9th Cir. 1998).

    B.    <u>Damages</u>

Next, the Court assesses the following categories of damages: future medical expenses, lost earnings (past and future), non-economic damages (past and future), and Mrs. Rufo's loss of consortium.[1]

---

[1] The Court notes that Mr. Rufo did not present evidence about his past medical expenses, and his attorney did not mention past medical expenses in his argument. *Trial Tr. I* 22:12–16 ("So the Court, at the end of this case, Your Honor, will be making a determination . . . as to liability, future medical expenses, past and future lost income, and past and future lost harms.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2138 PSG (ASx) | Date | February 28, 2020 |
|---|---|---|---|
| Title | Romulo Ray Rufo et al v. United States of America, et al | | |

   *i.*  *Future Medical Expenses*

  A party may recover future expenses that are reasonably certain to result from an injury or disability. *See Garcia v. Duro Dyne Corp.*, 156 Cal. App. 4th 92, 97–98 (2007). "The fact that the amount of future damages may be difficult to measure or subject to various possible contingencies does not bar recovery." *Id.* An award of future damages must be discounted to its net present value. *See United States v. English*, 521 F.2d 63, 71–72 (9th Cir. 1975).

  In support of his future medical expenses, Mr. Rufo put forth the testimony and accompanying report of Barbara Greenfield of BG Nurse Consultants, who developed a "life-care plan" for him. *See* Ex. 42. Timothy Lanning, Plaintiff's forensic economist, testified that the total net present value of the life care plan amounted to $1,350,700. *See* Ex. 45. The Government objected to several items in the plan, including the pre-treatment EEG, the transcranial magnetic stimulation procedure, the appointments with a neuropsychiatrist, orthopedic spine evaluations, the driving evaluations, massage therapy, acupuncture, the BrainHQ working memory training, and the use of Excedrin, among others. *See Trial Tr. III* 19–31. It also objected to the use of a life coach, case manager, and a medical management nurse. *See id*.

  The Court generally adopts the life care plan as the measure of Mr. Rufo's future medical expenses, but deducts certain items that it deems unnecessary. Specifically, the Court deducts the cost of the pre-treatment EEG, the transcranial magnetic stimulation procedure, massage therapy, acupuncture, the BrainHQ working memory training, or Excedrin, which Dr. Ludwig testified had been taken off the market, in the award. *See Trial T. II* 47:13–16. The Court will also deduct the cost of rideshare services because the life care plan indicates that Mr. Rufo will eventually drive again. *See* Ex 42-16. Finally, the Court deducts the cost of hiring a life coach and a medication management nurse.

  According to the Lanning report, the present value of these services is $757,180. *See* Ex. 45-9–45-11. Taking the difference between the original calculation in the life care plan of $1,350,700 and these deductions, the Court awards Mr. Rufo $593,520 in future medical expenses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2138 PSG (ASx) | Date | February 28, 2020 |
|---|---|---|---|
| Title | Romulo Ray Rufo et al v. United States of America, et al | | |

> ii.  *Lost Earnings*
>
> a.  *Past Losses*

To recover past lost earnings, Mr. Rufo must prove the amount of income that he has lost to date. *See* California Civil Jury Instruction No. 3903C. Plaintiff presented testimony from Dr. Edelman, who examined Plaintiff in May 2018 and found that he was permanently disabled. *See Trial Tr. I* 201:24–202:1. The Court found this testimony credible. It similarly found the Lanning report on loss of past wages and employer contributions to health insurance credible, although it declines to award damages for lost 401K and pension benefits because it is uncertain if the employment he would have found after he was laid off from Southern California Edison would have offered those benefits. *See* Ex. 45-1.

As such, the Court awards Mr. Rufo $288,248 in past lost earnings.

> b.  *Future Losses*

California courts awarding lost future earnings "have held such damages are recoverable where the evidence makes reasonably certain their occurrence and extent." *Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 738 (2017) (internal quotation marks omitted). The Court again finds Dr. Edelman's testimony about Mr. Rufo's total disability and the Lanning report credible in assessing Mr. Rufo's future earnings. *See Trial Tr. I* 201:24–202:1; Ex. 45-1. However, the Court adds two caveats. First, it again deducts the 401K and pension benefit calculations in the report because the benefits from any replacement employment for Mr. Rufo are uncertain. Second, the Court calculates the future earnings through age 65, rather than through age 66.2 as the Lanning report does.

Therefore, taking the Lanning report's forecasted after-tax future earnings and health benefits of Mr. Rufo at $814,483 for 118 months, the Court prorates that amount over 104 months (through Mr. Rufo's 65th birthday) and awards him $717,813.20 in future lost earnings.

> iii.  *Non-Economic Damages: Pain and Suffering, Emotional Distress, and Loss of Enjoyment of Life*

"For harm to body, feelings or reputation, compensatory damages reasonably proportioned to the intensity and duration of the harm can be awarded without proof of amount other than evidence of the nature of the harm. . . . The discretion of the judge or jury determines

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2138 PSG (ASx) | Date | February 28, 2020 |
|---|---|---|---|
| Title | Romulo Ray Rufo et al v. United States of America, et al | | |

the amount of recovery, the only standard being such an amount as a reasonable person would estimate as fair compensation." *See Duarte v. Zachariah*, 22 Cal. App. 4th 1652, 1664–65 (1994).

At closing argument, Plaintiff's counsel asked for $1,267,176 in past non-economic damages, and $4,818,000 in future non-economic damages. *See Trial Tr. III* 196:24–197:10. Based on the evidence presented at trial, the Court finds that $500,000 in past non-economic damages and $1,500,000 in future non-economic damages is appropriate. Thus, the Court awards a total of $2,000,000 in non-economic damages to Mr. Rufo.

### iv. *Loss of Consortium*

Damages for loss of consortium must be reasonable, as well as based on the evidence and the factfinder's common sense. *See* California Civil Jury Instruction No. 3920. At closing argument, Plaintiff's counsel asked for "a multiple six figure number at a minimum" for Mrs. Rufo's loss of consortium damages. *See Trial Tr. III* 198:21–24. Based on the evidence presented at trial, the Court finds an award of $500,000 appropriate.

### v. *Summary*

In sum, the Court finds the following damages reasonable and supported by the evidence:

- Future Medical Expenses: $593,520

- Past Lost Earnings: $288,248

- Future Lost Earnings: $717,813.80

- Past and Future Non-Economic Damages: $2,000,000

- Loss of Consortium: $500,000

- **Total Damages: $4,099,581.80**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-2138 PSG (ASx) | Date | February 28, 2020 |
|---|---|---|---|
| Title | Romulo Ray Rufo et al v. United States of America, et al | | |

IV. Conclusion

For the foregoing reasons, the Court finds that the Government is liable for Mr. and Mrs. Rufo's injuries, and that the March 16, 2016 accident caused those injuries. The Court awards Plaintiffs **$4,099,581.80** in damages.

Plaintiffs are ordered to prepare a judgment consistent with this Order to be filed with the Court no later than **March 13, 2020**.

**IT IS SO ORDERED.**